IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


JEFFREY MARTIN WALKER,                    *
    Petitioner,                           *
                                          *
                                          *
                                          *
      v.                                  *
                                          *    CIVIL NO. 13-1448(PG)
                                          *    RELATED CRIM. 08-0400(PG)
UNITED STATES OF AMERICA,                  *
    Respondent.                           *
_____

**OPINION & ORDER**

Before the Court are several motions: Petitioner's 28 U.S.C. Sec. 2255 Habeas Corpus Petition (D.E.1)[1]; Respondent's Response to the Petition (D.E.11); Petitioner's Motion Submitting Amendments (D.E. 20); Respondent's Response to Motion Submitting Amendments (D.E. 28); Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence (D.E. 31); and Respondent's Response to Amended 2255 Petition (D.E. 34). For the reasons discussed below, the Court finds all the Petitions shall be **DENIED** and the request for evidentiary hearing is also **DENIED**.

**I. BACKGROUND**

On December 2, 2008, Petitioner, Jeffrey Martin Walker (hereinafter "Petitioner" or " J. Walker") was indicted in a thirteen (13) count Indictment by a Federal Grand Jury (Crim. D.E. 6 of Case No. 08-417(PG))[2].

Count One (1) charged: On or about August 23, 2008, in the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, the above mentioned defendant, JEFFREY MARTIN WALKER, unlawfully, willfully and knowingly did travel in interstate commerce with the intent to kill,

---

[1] D.E. is an abbreviation of docket entry number.

[2] Crim.D.E. is an abbreviation of criminal docket entry.

injure, harass, and place under surveillance with the intent to kill, injure, harass, and to intimidate another person, and in the course of and as a result of such travel did place that person in reasonable fear of death and did cause substantial emotional distress to that person and a member of the immediate family of that person, to wit, defendant WALKER did travel from Michigan to Puerto Rico with the intent to kill, injure and harass A.W. (his then wife) and A.M.W. (their son) and place such individuals in reasonable fear of serious bodily injury to themselves and each other, and did cause them substantial emotional distress, in violation of Title 18, United States Code, Section 2261A(1). (D.E. 6 at p. 1 in Cr. 08-0400(PG)).

Counts two (2) through eleven (11) charged: On or about the dates listed below, in the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, the above mentioned defendant, JEFFREY MARTIN WALKER, unlawfully, willfully and with the intent to kill, injure, harass, and place under surveillance with intent to kill, injure, harass, and intimidate, and cause substantial emotional distress to a person in another State, did use the mail, an interactive computer service, and a facility of interstate commerce to engage in a course of conduct that did cause substantial emotional distress to that person, to wit, defendant, JEFFREY MARTIN WALKER, who resided in Michigan, sent several electronic mail messages (emails), while posing as his son A.M.W.,to his then wife, A.W., who resided in Puerto Rico, and caused her and her immediate family members substantial emotional distress, in violation of Title 18, United States Code, Section 2261(A)(2):

Count 2: March 13, 2008 at 12:26 AM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto

Rico, entitled "Whoreable [sic] Behavior";

Count 3: March 28, 2008 at 10:04 AM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "My trip";

Count 4: March 28, 2008 at 11:31 AM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "I Know";

Count 5: March 29, 2008 at 7:46 AM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "Phone call";

Count 6: March 31, 2008 at 8:51 PM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "reasons";

Count 7: April 1, 2008 at 2:29 PM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "Do you want a copy";

Count 8: April 1, 2008 at 4:52 PM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "no subject";

Count 9: April 4, 2008 at 9:31 AM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "Pictures";

Count 10: April 4, 20008 at 9:58 PM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto Rico, entitled "You wanted something";

Count 11: April 4, 2008 at 11:36 PM - Email from Jeffrey Walker, resident of Michigan, posing as his son, to A.W., resident of Puerto

Rico, entitled "What are you doing". (D.E. 6 at p. 2-3 in Cr. 08-0400(PG)).

Count twelve (12) charged: On or about October 14, 2008, in the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, the above mentioned defendant, JEFFREY MARTIN WALKER, did knowingly and willfully deposit in an authorized depository for mail matter, to be sent and delivered by the Postal Service, and knowingly caused to be delivered by the Postal Service according to the directions thereon, a communication, postmarked October 14, 2008, addressed to: A.W., US District Court, 150 Chardon Ave., Hato Rey, PR 00918, that contained the following threat to injure A.W. and their son[3] in violation of Title 18, <u>United States Code</u>, Section 876(c). (D.E. 6 at p. 3-4 in Cr. 08-0400 (PG)).

Count thirteen (13) charged: On or about October 28, 2008, in the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, the above mentioned defendant, JEFFREY MARTIN WALKER, did knowingly and willfully deposit in an authorized depository for mail matter, to be sent and delivered by the Postal Service, or knowingly caused to be delivered by the Postal Service according to the directions thereon, a communication, postmarked October 28, 2008, addressed to: Tony Walker (no

---

[3] Do you fear god? You should. He is long suffering but when he jumps on you he jumps hard. A marriage is more important to God than a child. Be careful as he could take Andrew away from both of us. When the Jews crucified Jesus, they said let his blood be on our hands. Look at how hard the Jews have had it! I fear for you. My Mom said something similar about my Dad during their divorce. Two years later she died of cancer. What if [A.M.W.] died? God will teach you wheather [sic] you want to be taught or not. I don't know if you really accept Christ as your savior. I pray you did! But if you did please pray. Please pray about this for your own protection too. God uses our children to teach us Amy! The Bible talks about a mother or father loving a child more than him! If you do he may take him. You don't want God to jump on you. What would you do if [A.M.W.] gets sick or hurt. Maybe he dies! Remember what you said? It [sic] on my hands. Be careful about such things. He loves you and will punish you too. (D.E. 6 at p. 4 in Cr. 08-0400(PG)).

relation), 1473 Tuscola Rd, Clio, Michigan 48420, and containing the following threat to injure A.W. and their son A.M.W.[4] in violation of Title 18, United States Code, Section 876(c). (D.E. 6 at p. 4-6 in Cr. 08-0400(PG)).

On December 5, 2008, Petitioner's Arraignment Hearing was held[5], (D.E. 9 in Cr. 08-0400 (PG)).

On December 5, 2008, J. Walker's Bail Hearing was held. Petitioner was ordered detained pending trial for being a risk of flight and a danger to the community, (D.E. 10 in Cr. 08-0400(PG)).

---

[4]If a man or woman would have done what my wife and brother did to me, I would have killed them. I would love to bounce things off you before I act on them <u>but</u>! [sic] (emphasis in original) I need to ask you if you would feel compelled to tell the police if you knew I was going to violate the law? If I did violate the law would you inform on me? If the answer is yes, I guess that will illiminate [sic] much of what I wanted to ask you! I have met a lot of people in Prison. Most are Catholics. They are funny, they have tattoo of Jesus...They will go kill someone for a thousand dollars. I would love to talk about what I have been thinking about doing, but need an answer from you first! What I am doing may fall under the realm of tempting GOD! But what are you suppose [sic] to do when he won't answer you? I met a man here, probably 65 or 70 years old. Very small and thin. Seemed to be by himself a lot, like me. Because I don't speak Spanish, I sit alone a lot. Anyway, I gave him a cookie one day and shook his hand and said hello. He smiled back. For the next two weeks I shared my food with him and smiled at him. The other prisoners always watched me when I talked to him and talked among themselfs [sic] about it. I didn't know why until last week. This man is like a Godfather of some big gang or some organization. The other prisoners had to get permission to approach him, but I was to [sic] stupid to know. A few days ago a guy told me who he was and that he was responsible for killing almost 100 people and I should be careful not to piss him off. WOW! I just continued to be nice to him. Then two young men that spoke broken English approached me and asked me why I was there. How long I had to be there and all that stuff. I told him about [A.W.] and [A.M.W.]- how she worked for the head Judge these and they put me in jail to keep me from my son. The next day they came back with another guy that asked me if my wife was tall and had big eyes. I said yes! He asked if she worked for Judge Fusté. Again I said yes! This next week or this week the old guy came to me alone with some pictures of [A.W.] and [A.M.W.]. He asked me if that was my wife! I said yes. He then asked me through his young guys if I wanted her killed. I didn't know what to say! I was so surprised! I smiled and laughed. He smiled back and nodded his head at me. I don't know if I said yes to him or not? This world here is like the movies, life death killing is so normal to them. See what a little kindness gets you - a free killing (Just Joking).(D.E. 6 at p.5-6 in Cr. 08-0400(PG)).

[5]At said hearing counsel for J. Walker presented a verbal motion requesting defendant's case be transferred to a different venue.  The Court denied the motion without prejudice and recommended the same be presented before the presiding judge, (D.E. 9 in Cr. 08-0400(PG)).

On March 24, 2009, Petitioner, acting pro se, filed a Motion to Appoint New Counsel[6], (D.E. 19 in Cr. 08-0400(PG)).

On March 30, 2009, the Hearing for Appointment of New Counsel was scheduled. The same was not held because Petitioner refused to leave MDC Guaynabo on said date to attend his Court hearing, (D.E. 21 in Cr. 08-0400(PG)).

On June 2, 2009, the government filed its Motion Under Rule 404(b) Disclosure, (D.E. 29 in Cr. 08-0400(PG)).

On June 10, 2009, J. Walker filed, pro se, a letter in which he requested a change of venue[7], (D.E. 31 in Cr. 08-0400(PG)).

On June 12, 2009, Petitioner, through his counsel, filed his Opposition to the Introduction of 404(b) Evidence in the Government's Case in Chief, (D.E. 33 in Cr. 08-0400(PG)).

On June 16, 2009, the Court entered a Sealed Order which related to Petitioner's previously filed letter (D.E.31 in Cr. 04-0400(PG)). In said Order the Court stated its reasoning for not recusing itself, clarified Petitioner's misconceptions about personal and professional relationships amongst court employees and order AFPD Irizarry to file her position on the matter, (D.E. 37 in Cr. 08-0400(PG)).

On June 22, 2009, A.F.P.D. Irizarry filed her Motion in Compliance

---

[6] J. Walker did not provide an explanation as to why he was requesting new counsel. The record reflects that from the outset of Petitioner's case he was represented by Assistant Federal Public Defender Yazmin Irizarry.

[7] Although the letter was sealed by the Court, the crux of the request was that J. Walker believed he could not get a fair trial before this Court due to his wife being an employee of the court. He extended his concern to his attorney whom he claimed had a personal and working relationship with his wife.

with the Court's Order of June 16, 2009[8], (D.E. 40 in Cr. 08-0400(PG)).

On July 8, 2009, Petitioner, through his counsel, filed a Motion for Change of Venue[9], (D.E. 51 in Cr. 08-0400(PG)).

On July 16, 2009, the government filed its Response in Opposition to Defendant's Motion for Change of Venue, (D.E. 61 in Cr. 08-0400(PG)).

On July 27, 2009, Petitioner, through his counsel, filed Motion Requesting Guardian Ad Litem for the minor A.M.W.[10] (D.E. 69/71 in Cr. 08-0400(PG)).

On July 28, 2009, the government filed its Response in Opposition to the Appointment of a Guardian Ad Litem, (D.E. 70 in Cr. 08-0400(PG)).

On July 29, 2009, the government filed a Supplemental Motion to its original Opposition to the Appointment of a Guardian Ad Litem, (D.E. 72 in Cr. 08-0400(PG)).

On July 31, 2009, a Status Conference was held.  During said Status Conference the Court denied Petitioner's request for Change of Venue as well as Petitioner's request for an Appointment of a Guardian Ad Litem,

---

[8]In her motion, A.F.P.D. Irizarry responded to J. Walker's allegations as to her and the F.P.D's Office personnel relationship (friendship) with the victim Amy Walker and her male friend who is also a court employee.  Contrary to J. Walker's allegation, counsel left no doubt that all of the F.P.D.'s personnel including herself have had a professional working relationship with A.W., as she is a court reporter in the district and with her male friend who works on audio/visual matters in the district.  Counsel further informed that she had discussed with Petitioner the filing of a change of venue and recusal of the F.P.D. as his counsel and advised that she would not file said motion unless Petitioner could provide details as to his allegations.  Counsel instructed J. Walker to file said request in pro se form if he felt it necessary to inform the court, (D.E. 40 at p. 2 in Cr. 08-0400(PG)).

[9]Counsel premised the request on the argument that based on the overall circumstances of the case and its participants, the same would inevitably create the appearance of impropriety and of a potential injustice, (D.E. 51 at p.2-3 in Cr. 08-0400(PG)).

[10]The case docket reflects that docket entry 69 was filed in error for it lacked certificate of service.  The same document with the certificate of service was re-filed on July 29, 2009, and entered as docket 71.

(D.E. 82 in Cr. 08-0400(PG)).

On August 3, 2009, J. Walker's trial started, (D.E. 98 in Cr. 08-0400(PG)).

On August 4, 2009, J. Walker's second day of trial was held. Outside the presence of the jury the Court ruled on D.E. 29, the use by the government of 404(b) evidence. The Court made specific findings as to each prior bad act the government wished to introduce in its case in chief before either granting or denying their use, (D.E. 100 in Cr. 08-0400(PG)).

On August 18, 2009, Petitioner, through his counsel, filed a motion requesting Hon. Judge John A. Gadola be allowed to testify on that same day by phone or video conference, (D.E. 119 in Cr. 08-0400 (PG)). The motion was denied, (D.E. 122 in Cr. 08-0400(PG)).

On August 20, 2009, after twelve (12) days of trial, the jury reached a verdict, (D.E. 125 in Cr. 08-0400(PG)). J. Walker was found guilty on counts one (1), three (3), four (4), eight (8), eleven (11) and thirteen (13). Petitioner was found not guilty on counts two (2), five (5), six (6), seven (7), nine (9), ten (10) and twelve (12), (D.E. 127 in Cr. 08-0400(PG)).

On December 11, 2009, Petitioner's Pre Sentence Report was submitted, (D.E. 157 in Cr. 08-0400(PG)).

On December 14, 2009, the government filed its Sentencing Memorandum, (D.E. 158 in Cr. 08-0400(PG)).

On December 15, 2009, J. Walker, through his counsel, filed Objections to the Pre Sentence Report, (D.E. 159 in Cr. 08-0400(PG)).

On December 16, 2009, J. Walker's Sentencing Hearing was held. Petitioner was sentenced to a term of imprisonment of sixty (60) months as to count one (1); a term of imprisonment of sixty (60) months as to counts

three (3), four (4), eight (8) and eleven (11) to be served concurrently with each other, but consecutively to the sentence imposed in count one (1); and a term of imprisonment of seventeen (17) months as to count thirteen (13), to be served consecutively to all counts for a total term of imprisonment of one hundred and thirty seven (137) months.  A term of Supervised Release of three (3) years was imposed as to all counts to be served concurrently with each other and a Special Monetary Assessment of one hundred (100) dollars was imposed as to each count for a total of six hundred (600) dollars, (D.E. 163 in Cr. 08-0400(PG)).

On December 18, 2009, Petitioner's Judgment was entered, (D.E. 165 in Cr. 08-0400(PG)).

On December 23, 2009, J. Walker filed Notice of Appeal, (D.E. 166 in Cr. 08-0400(PG)).

On November 23, 2011, the First Circuit Court issued its Opinion and Order affirming J. Walker's conviction and sentence, <u>United States</u> v. <u>Jeffrey Martin Walker</u>, 665 F.3d 212 (1st Cir. 2011).

On June 4, 2012, the Supreme Court denied J. Walker's Petition for Certiorari, <u>Walker</u> v. <u>United States</u>, 132 S.Ct. 2713(2012).  Pursuant to AEDPA's statute of limitations, J. Walker had one (1) year as of June 4, 2012 to file a timely 2255 Petition for relief.  Petitioner signed his Petition on May 29, 2013, and thus, the same is timely.

## II. DISCUSSION

In his original 2255 Petition (D.E. 1), J. Walker raised the following allegations of ineffective assistance of counsel:

> (1) Trial counsel rendered ineffective assistance of counsel for failure to object to duplicitous Indictment.

> (2) Trial counsel rendered ineffective assistance of counsel for

failure to challenge the Indictment as multiplicitous.

(3) Trial counsel was ineffective in allowing the erroneous admission of evidence and highly prejudicial testimony.

(4) Trial counsel was ineffective in not requesting cautionary instructions concerning the artificial inflation of A.W.'s credibility due to her position at the Courthouse.

(5) Trial counsel rendered ineffective assistance of counsel in her failure to file a motion to withdraw as counsel and not informing the court that she knew the victim and worked with her on a daily basis.

(6) Trial counsel was ineffective when she failed to move for a mistrial when the jury saw Petitioner in handcuffs.

(7) Trial counsel was ineffective when she failed to move for a mistrial immediately after viewing the jurors repeatedly referring to a Spanish/English dictionary throughout the trial.

(8) Trial counsel was ineffective when she failed and/or refused to subpoena appropriate computer records.

(9) Trial counsel was ineffective when she failed and/or refused to place the defense's most important witness on the defense witness list.

(10) Trial counsel was ineffective when knowing that the Indictment was duplicious and multiplicious and failed and/or refused to object to said errors, or to preserve these issues for an appeal.

In addition J. Walker makes the following claims:

(11) Claim of actual innocence.

(12) Petitioner was subjected to excessive punishment outside the original guideline range calculated and recommended.

J. Walker also filed an Amended Petition Pursuant to Section 2255

(D.E. 31) and raised the same allegations as in his original petition and added the following ones:

> (13) Trial counsel was ineffective for failing to object to inaccuracies contained in the Pre Sentence Report.

> (14) Counsel was ineffective for failing to advise J. Walker of any plea offer of the government and/or by failing to seek plea negotiations.

Before this Court addresses all fourteen (14) allegations raised by Petitioner, it will list some of the factual findings as determined by the First Circuit Court of Appeals in its opinion of <u>United States </u>v. <u>Jeffrey Martin Walker</u>, 665 F.3d 212 (1st Cir. 2011). This cumbersome task is necessary because several of the allegations raised by J. Walker in his 2255 Petition have been previously disposed of or discussed by the First Circuit Court in its opinion. J. Walker has astutely framed many of his arguments in a wording that is not quite the same as the arguments he raised on appeal and were disposed of, which would render them barred from bringing them before this Court. This Court is not fooled and will gladly go through the painstaking task of highlighting salient points of the First Circuit's opinion.

- The appellant and his wife, Amy Walker, lived together with their pre-teen son, A.M.W., until their relationship soured. <u>Walker</u> at 220.

- As the rift between the spouses deepened, Amy began receiving harassing and threatening e-mails. These communiqués were laced with derogations such as "whore" and "bitch" and contained threats to harm Amy if she continued her battle for custody. <u>Walker</u> at 221.

- Although the emails originated from A.M.W.'s e-mail account, A.M.W. testified that his father had composed them. <u>Walker</u> at 221.

- Around this same time the appellant threatened to "blow [A.M.W.'s} head off" with a shot gun. The appellant's brother, Jack, heard the threat and called the police.  Alarmed by this development, Amy flew to Michigan and succeeded in obtaining a custody order from the court there.  The Michigan court allowed Amy and her son to reside in Puerto Rico after Amy's supervisor at work, Chief Judge José Fusté of the United States District Court for the District of Puerto Rico offered assurances that Amy would return to Michigan should subsequent proceedings require her presence. <u>Walker</u> at 221.

- Amy surreptitiously used her knowledge of his [Petitioner's] password to monitor his e-mails.  She learned that the appellant had contacted a militaristic website asking for pointers on wielding a knife in close combat. <u>Walker</u> at 221.

- Other actions during this period demonstrated the appellant's increasing desperation.  In the spring 2008, he engaged in an extended correspondence with a private investigator in Puerto Rico. Appellant wanted help in learning where his wife and son were living. <u>Walker</u> at 221.

- In April [2008], the appellant telephoned Amy's sister and described in gruesome detail how he would murder both his wife and his son if he lost the ongoing custody battle. <u>Walker</u> at 221.

- Appellant engaged in a long online chat with a counselor at New

Hope ministries, a Christian counseling center. During this chat, he expressed his resolve to harm Amy and stated that he could have her killed for "a few hundred dollars." <u>Walker</u> at 221.

- The day before he made these statement, the appellant had purchased a one-way airline ticket to Puerto Rico. <u>Walker</u> at 221.

- While incarcerated, the appellant composed a letter to Amy, exhorting her to pray lest God harm her or A.M.W. <u>Walker</u> at 222.

- The appellant also wrote to one Tony Walker (a friend, but not a relative) about a fellow inmate's offer to kill Amy for him[11]. <u>Walker</u> at 222.

- The crux of this contention [change of venue] is that it was unfair to try him in the same courthouse where Amy worked as a court reporter. <u>Walker</u> at 222.

- He [Petitioner] muses that the jurors may have given extra credence to Amy's testimony because of her position and because of testimony that Judge Fusté (then the chief judge of Puerto Rico's federal district court) had "vouched" for Amy in the Michigan custody proceedings and had encouraged her to contact the FBI when she learned of the appellant's plane trip to Puerto Rico. <u>Walker</u> at 222.

- The mere fact that the victim of a crime is a court employee in the district is not, in and of itself, a reason sufficient to compel a transfer of venue. <u>Walker</u> at 223.

_____

[11]At that time J. Walker was incarcerated in the state jail of Puerto Rico pursuant to a criminal contempt charge.

- The appellant tries a variation of this theme. He says that Amy's status as a court employee, coupled with the testimony about the chief judge's intervention and ongoing advice, biased the jury against him. <u>Walker</u> at 223.

- This case was not about the chief judge, who neither presided over the trial nor appeared as a witness. <u>Walker</u> at 223.

- To bare essence, the claim of jury prejudice is composed entirely of speculation and surmise. <u>Walker</u> at 223.

- To cinch matters, a fair trial was possible in Puerto Rico, and the jury's careful picking and choosing among the counts charged is a strong indication that the appellant received one. <u>Walker</u> at 224.

- [404(b) evidence] evidence that the appellant's estranged wife and son had witnessed him uttering threats and engaging in violence was specially relevant to show the reasonableness of their apprehension of harm when the appellant after making a series of menacing statements, departed abruptly for Puerto Rico. <u>Walker</u> at 229.

- In the grand scheme of things, the challenged testimony constituted a tiny part of the government's case [testimony of Tony Walker]. It is wildly implausible that the jury would have reached a different conclusion about the appellant's intent in the absence of this testimony. <u>Walker</u> at 230.

- Amy's testimony that he [Petitioner] "had threatened to kill [A.M.W.] and then himself" was not heresay: Amy gave it in response to a question that asked for her personal knowledge. <u>Walker</u> at 231.

- The usual rules of evidence do not pertain at sentencing. Rather, the district court may base sentencing determinations on any evidence that it reasonably finds reliable. <u>Walker</u> at 232.

- The court's corollary finding that the appellant should have known that his pre-teen son was virtually powerless to fend off or prevent the stalking is equally beyond reproof. Minors are often regarded as especially vulnerable victims. <u>Walker</u> at 233.

- The court departed upward by two levels for unusual seriousness of the interstate stalking crime. It simultaneously increased the CHC from I to IV to represent more accurately the appellant's criminal past. These departures elevated the GSR to 110 to 137 months, the court sentenced the appellant at the top of his reconstructed range. <u>Walker</u> at 233.

- In determining that the interstate stalking offense was so serious as to take it out of the heartland, the sentencing court gave weight to the number and horrific nature of the appellant's threats, the length of time over which the threats were made, and the meticulousness of the appellant's plotting. <u>Walker</u> at 233.

- By like token, the sentencing court's determination that the appellant's CHC underrepresented his criminal past was within the encincture of its discretion. <u>Walker</u> at 233-234.

- The appellant's final sentencing challenge implicates the substantive reasonableness of his sentence. This challenge fails. The appellant committed a litany of serious crimes, and the aggravating factors are many and varied. <u>Walker</u> at 234.

## A. 28 U.S.C. Sec. 2255 standards and exhaustion requirements

Title 28 U.S.C. Sec. 2255 allows a federal prisoner to move the court to vacate, set aside, or correct his sentence if one of the following events happens:

1.    the sentence was imposed in violation of the Constitution or laws of the United States;

2.    the court was without jurisdiction to impose the sentence;

3.    the sentence was in excess of the maximum authorized by law; or,

4.    the sentence is otherwise subject to collateral attack.

When a prisoner files a motion for relief pursuant to section 2255, the court may dismiss the motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255(b).

It is well settled law that a section 2255 motion is not a substitute for an appeal.  Therefore, the defendant must first raise his claims on direct appeal before bringing the claim in a section 2255 motion. United States v. Essig, 10 F.3d 968 (3d Cir 1993).  If a defendant fails to preserve his claim on direct appeal a court may not consider the claim in a subsequent section 2255 motion, unless the defendant can establish "cause and prejudice", United States v. Frady, 456 U.S. 152, 167 (1982); or a "fundamental miscarriage of justice". Murray v. Carrier, 477 U.S. 478, 496 (1986).  The exception to this exhaustion requirement is the allegation of ineffective assistance of counsel which may be brought for the first time in a section 2255 motion.

Furthermore, it is a clear set rule that claims which have been previously settled on direct appeal, are barred from being revisited through collateral proceedings. Withrow v. Williams, 507 U.S. 680 (1983).

Claims that have been previously addressed on direct review, may not be re-adjudicated collaterally under section 2255 absent equitable considerations, such as innocence or cause and prejudice. <u>Berthoff</u> v. <u>United States</u>, 308 F.3d 124 (1st Cir. 2002).

As the record reflects and the First Circuit Court set forth in detailed fashion, the allegations enumerated in this Opinion and Order as numbers three (3) and twelve (12) were already addressed by the First Circuit Court in Petitioner's appeal. As such, J. Walker is precluded from presenting them in his current 2255 Petition and consequently they will not be entertained by the Court.  Therefore allegations three (3) and twelve (12) are hereby **DISMISSED.**

The Court now turns to the remaining allegations of ineffective assistance of counsel.

**B.   Claim of Ineffective Assistance of Counsel**

The standard for an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668 (1984); <u>Lema</u> v. <u>United States</u>, 987 F.2d 48 (1st Cir. 1993). In order to succeed in a claim of ineffective assistance of counsel, J. Walker must show both incompetence and prejudice: (1) Petitioner must show that counsel's representation fell below an objective standard of reasonableness, and (2)  that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, <u>Argencourt</u> v. <u>United States</u>, 78 F.3d 14 (1st Cir. 1996), <u>Darden</u> v. <u>Wainwright</u>, 477 U.S. 168 (1986), <u>Lockhart</u> v. <u>Fretwell</u>, 506 U.S. 364 (1993).

Petitioner bears a "very heavy burden" in his attempt to have his

sentence vacated premised on an ineffective assistance of counsel claim, Argencourt v. United States, 78 F.3d 14,16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). Even more so under Strickland standard, "only where, given facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodriquez, 675 F.3d 48, 56 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which in turn quotes Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

In order to successfully satisfy the first prong of the Strickland test petitioner must show that "in light of all the circumstances, the identified acts or omissions [allegedly made by his counsel] were outside the wide range of professionally competent assistance." Tejada v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (citing Strickland 466 US. at 690). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (citing Strickland at 689). Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (citing Strickland 466 U.S. at 689).

The second prong of the Strickland test, the element of prejudice, also sets the bar high. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Argencourt v. United States, 78 F.3d at 16 (citing Strickland, 466 U.S. at 691). Petitioner must "prove that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been

different." <u>Knight</u> v. <u>United States</u>, 37 F.3d 769, 774 (1st Cir.1994) (citing <u>Strickland</u>, 466 U.S. at 687).

This means that if petitioner is successful in showing deficiencies in his counsel's representation, he then must conclusively establish that those deficiencies led to a real prejudice against him in the criminal proceedings. <u>Id</u>. at 694. J. Walker has failed to meet the <u>Strickland</u> standard in all of his claims.

**Ineffective Assistance of Counsel – Trial Counsel rendered ineffective assistance of counsel for failure to object to duplicitous Indictment**

J. Walker's first allegation of ineffective assistance of counsel relates to the interstate stalking count. Count one charged Petitioner with stalking both his ex-wife Amy Walker and their son A.M.W.. Petitioner's contention is that since he was charged with stalking two separate victims in the same count, the count has to be duplicious. Counsel was thus ineffective in her failure to object to the count itself, in her failure to request a unanimity instruction.

A duplicitous indictment is one that "joins in a single count... two or more distinct and separate offenses." <u>United States</u> v. <u>Newell</u>, 658 F.3d 1, 23 (1st Cir. 2011) (quoting <u>United States</u> v. <u>Canas</u>, 595 F.2d 73, 78 (1st Cir. 1979)). If it is determined that an indictment has a duplicitous count then a specific unanimity instruction must be given. <u>Newell</u> at 23.

In order for Petitioner to prevail in his claim of ineffective assistance of counsel under <u>Strickland</u>, he must be able to establish that counsel's failure to argue duplicitous indictment was a sound strategy at the time and that if she had so done, she would have prevailed; and there is a reasonable probability that the outcome as to count one (1) would have

been different.   J. Walker can not meet the <u>Strickland</u> standard.

Petitioner would like to engage the Court in a full length legal argument as to whether count one (1) is duplicitous and thus required an unanimity instruction. The Court won't bite though.  For what is before the Court is not the correctness of how the count was charged but rather whether his counsel acted ineffectively.

Even assuming that the interstate stalking count was duplicitous for the mere fact that it involved J. Walker's maliciously crude stalking of his ex wife and their son, Petitioner would still have to comply with the second part of <u>Strickland</u>.  To wit, that had a unanimity instruction been required and given it was more likely than not that his guilty verdict as to count one would have been different.  To put it simply, that the jury could have reasonably found J. Walker guilty as to stalking his ex wife and not guilty as to stalking their son, or vice versa.  This second prong Petitioner can not meet.

The evidence in this case is overwhelming.  Having gone back to the trial transcripts and read the complete trial testimony of both Amy Walker and the minor A.M.W., there is no doubt in the Court's mind that even if count one (1) were duplicitous, which it is not, the jury would have found Petitioner guilty as to both victims even if provided with the unanimity instruction.

The following is what the minor heard from his father, and worse, what he truly believed:

> The Prosecutor: What was he [J. Walker] saying?
>
> The Minor: He was just saying gruesome stuff about cutting my mom and me, stem to stern and end to end.  Shipping me back to Puerto Rico in a box, a wooden box...

The Prosecutor: How did it make you feel when you heard your dad say he wanted to send you back to Puerto Rico in a wooden box?

The Minor: Scared.

The Prosecutor: Did you think your dad was capable of carrying out those threats?

The Minor: Yes.

See Trial Transcript of August 4, 2009 at p. 109-110).

Later on during the Minor's testimony, he is asked about when he returned to Puerto Rico with his mother and his father, Petitioner, remained in Michigan.

The Prosecutor: When you got back to Puerto Rico did you have an occasion to speak with your dad by phone?

The Minor: Once.

The Prosecutor: And how did that conversation go?

The Minor: He-the social services had said if he said, he could just ask how I was but if he got into anything inappropriate my mom was to cut him off.  He started asking me where I lived. What's the address and my mom took the phone away.

See Trial Transcript of August 4, 2009, at p. 116.

The Prosecutor: Since you've moved back to Puerto Rico, what steps, if any, have you and your mother taken to improve your security, your personal security?

The Minor: Cameras around the house.

The Prosecutor: Cameras around the house.  What else, if anything?

The Minor: Cameras. There are bars on the windows.  We carry pepper spray and a taser.

        The Prosecutor: When did you install the cameras?

        The Minor: A few months-around the time that we thought my dad

        was going to get out of jail here.

<u>See</u> Trial Transcript, August 4, 2009, p. 117-118).

    The evidence in this case left no doubt of the overwhelming fear Petitioner instilled in the mind of his son. There is no doubt that once they were physically separated, the minor in Puerto Rico and Petitioner in Michigan, J. Walker's stalking was relentless. The evidence showed that in April 2008, Petitioner telephoned his ex-wife's sister and explained to her in gruesome detail how he would murder both his wife and his son. Six months later, J. Walker purchased a one-way ticket from Michigan to Puerto Rico, <u>United States</u> v. <u>Walker</u>, 665 F.3d at 221.

    There is no doubt that based on the evidence, the jury more likely than not would have found Petitioner guilty of interstate stalking as to his son.

    The evidence regarding the stalking by J. Walker toward Amy Walker is even more gruesome and overwhelming. The e-mails sent by J. Walker to his ex-wife were presented as evidence during the trial. The testimony of Petitioner's ex-wife lasted four (4) days and was very detailed as to her level of fear that at any moment Petition would appear out of nowhere and kill her.

    There is no doubt in the Court's mind that even if count one (1) were deemed duplicitous, which it is not, and a unanimity instruction would have been given, it is more likely than not that the jury would have found Petitioner guilty of interstate stalking as to Amy Walker as well.

    For the reasons previously stated, it is the determination of this Court that count one (1) of the indictment is not duplicitous and even if

it were, the outcome of Petitioner's guilty verdict would have been the same.  Thus Petitioner is unable to meet the <u>Strickland</u> standard. The allegation of ineffective assistance of counsel as to duplicity of count one of the indictment is **DENIED.**

### Ineffective Assistance of Counsel - Trial counsel rendered ineffective assistance of counsel for failure to challenge the Indictment as multiplicitous

J. Walker alleged that his counsel was ineffective in that she failed to challenge counts two (2) through eleven (11) as being multiplicitous. He provides no further argument on the matter nor does Petitioner cite any case law to sustain his position.

Counts two (2) through eleven (11) charged J. Walker with separate violations of Title 18, <u>United States Code</u>, Section 2261(A)(2). These were the separate emails sent by Petitioner to his ex-wife for the period of March 13, 2008 to April 4, 2008.  The Court notes that Petitioner was found not guilty as to counts two (2), five (5), six (6), seven (7), nine (9) and ten (10).

An indictment is multiplicitous and in violation of the constitutional prohibition against double jeopardy if it charges a single offense in more than one count, <u>United States</u> v. <u>Brandon</u>, 17 F.3d 409 (1st Cir. 1994).  The central question is whether a jury could find that the actions in the allegedly multiplicitous counts, viewed objectively, constituted separate events of criminal behavior, <u>Id</u>.

The evidence before the Court shows separate distinct emails sent by Petitioner through the use of his son's email account.  Each email is sent at a separate time, has a different subject matter, and each one is a separate instance of J. Walker harassing and intimidating his ex-wife.

Much like in a mail fraud case, each mailing is a separate violation of the statute. Thus, each time Petitioner sent another email, it was another violation of the statute.  Each count charged against J. Walker required independent proof that he had written or caused to be written the email in question, as well as sending it. After all, just because Petitioner sent one email didn't mean he sent another.  In addition, the jury had to determine if it had the intent to harass, kill or injure, the victim as to each individual count.  Judging from the jury's verdict, the jury viewed each email sent individually as a separate offense.

The argument of multiplicitous indictment fails as there can not be a valid claim of ineffective assistance of counsel for failure to raise what would amount to a meritless argument.  J.Walker's second allegation of ineffective assistance of counsel is **DENIED.**


**Ineffective Assistance of Counsel - Trial counsel was ineffective in not requesting cautionary instructions concerning the artificial inflation of A.W.'s [Petitioner's ex-wife] credibility due to her position at the Courthouse**

J. Walker alleged that his counsel should have asked for a cautionary instruction as to Amy Walker's testimony.  Petitioner argued that due to the fact that she was a court reporter within the district, that all the court personnel knew her, and that during the trial she kept portions of the trial record, a cautionary instruction should have been requested and given.

First, the issue of Petitioner's ex-wife being a court employee was already addressed by the First Circuit Court in its opinion and will not and cannot be rehashed in a collateral proceeding such as this one, Singleton v. United States, 26 F.3d 233 (1st Cir. 1994).  The mere fact that

the victim was a court employee does not per se inflate her testimony as Petitioner suggests, <u>Walker</u> at 223.

As to J. Walker's allegation that the victim participated in keeping portions of the record, the same is false.  Petitioner has made a blatant allegation that is neither supported by the record nor true.  The person whom transcribed all of the trial transcripts as well as the sentencing transcript was court reporter Yvette Richardson and the record is quite clear as to that.  Petitioner shall refrain from making bold assertions that are completely contrary to the record.

There is no evidence of Petitioner's allegations as to the artificial inflation of his ex-wife's testimony; furthermore the premise itself is based on non-existent facts.  As such, Petitioner's allegation of ineffective assistance of counsel for failure to request a cautionary instruction is **DENIED**.


**<u>Ineffective Assistance of Counsel – Trial counsel rendered ineffective assistance in her failure to file a motion to withdraw as counsel and not informing the court that she knew the victim and worked with her on a daily basis</u>**

J. Walker claimed that his attorney was ineffective because she did not withdraw from the case or informed the court of her professional and personal relationship with the victim, Petitioner's ex-wife.  Petitioner's meritless allegation is completely contrary to the record.

Petitioner is reminded that he himself sent a letter to the judge in this case, then Judge Dominguez, in which he made a series of bold allegations as to the relationships the victim had with different individuals in the court.  Said letter was filed by the Court *motu propio* as sealed docket 31 in Cr. No. 08-0400(PG).

As a result of the letter sent by Petitioner, the court informed the parties, the government and defense counsel, of the existence of the letter and provided them with copies during a status conference (D.E. 32 in Cr. 08-400(PG)). On June 16, 2009, the Court entered a sealed order in which it clarified the preposterous allegations made by Petitioner in his letter and instructed defense counsel A.F.P.D. Yazmin Irizarry to respond to Petitioner's allegations within five (5) days[12], (D.E. 37 in Cr. 08-0400(PG)).

On June 22, 2009, attorney filed the motion in compliance with the Court's order. In said motion A.F.P.D. Irizarry left no doubt that the allegations brought by J. Walker were not only preposterous but untrue. A.F.P.D. left no doubt that her only interaction with the victim was when she appeared in court as an A.F.P.D. and the victim was the court reporter. She specifically stated that there was no personal relationship, only a professional relationship within the context previously stated, (D.E. 40 in Cr. 08-0400(PG)).

Once again this Court is faced with allegations brought by Petitioner that are contrary to the record and simply not true. If Petitioner's intent by so doing is to taint a record with falsities, he will not succeed.

Petitioner's allegations as to his counsel's ineffectiveness for her failure to withdraw are completely meritless and contradicted by the record. The same are thus **DENIED**.

---

[12]The allegations referred to by the Court were as to attorney Irizarry's professional and personal relationship with the victim.

Civil No. 13-1448(PG)                                           Page 27

**Ineffective Assistance of Counsel - Trial counsel was ineffective when she failed to move for a mistrial when the jurors saw Petitioner in handcuffs**

Petitioner's allegation is that his counsel was ineffective because, according to him, jurors saw him in handcuffs and chained and his attorney did not move for a mistrial once this happened.

J. Walker has provided no further information as to this allegation. He has made no reference to the record when presenting it. The Court is at a loss as to where and when this happened or if this even happened; for the record is void of any such incident. "Judges are not expected to be mind readers. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

At any rate, the mere fact that a juror or jurors saw a defendant in handcuffs does not mean that the defendant is entitled to a mistrial, United States v. Ayres, 725 F.2d 806(1st Cir. 1984); Dupont v. Hall, 555 F.2d 15 (1st Cir. 1977).

Petitioner's allegation of ineffective assistance of counsel as to failure to request a mistrial because jurors allegedly saw him in handcuffs is **DENIED**.

**Ineffective Assistance of Counsel - Trial counsel was ineffective when she failed to move for a mistrial immediately after viewing the juror repeatedly referring to a Spanish/English dictionary throughout the trial**

Once more, Petitioner raised his allegation of ineffective assistance of counsel for failure to request a mistrial. In this instance, J. Walker would like this Court to believe that his attorney saw members of the jury pass amongst themselves a Spanish/English dictionary on repeated occasions throughout his trial, thereby implying a lack of proficiency in the English

Civil No. 13-1448(PG)                                                   Page 28

language.

Once again Petitioner makes bold allegation which he frames as actual facts and wishes this Court to believe them.  There is not a *scintilla* of evidence on the record that this incident ever occurred, not even once. Furthermore, this Court oversaw J. Walker's trial and did not observe at any time members of the jury passing a dictionary amongst themselves.  In addition, it is the practice of this Court not to allow jurors to have notebooks or take notes during trial so the mere presence of a dictionary or book of some sort would have been noticed immediately by the Court[13].

Baseless allegations that construe facts that simply did not occur will not be tolerated nor entertained by this Court.  Petitioner's allegation of ineffective assistance of counsel based on juror's use of a dictionary is **DENIED.**


**Ineffective Assistance of Counsel - Trial Counsel was ineffective when she failed and/or refused to subpoena appropriate computer records.**

Petitioner alleged that his counsel failed to request subpoenas for computer records that would have illustrated that the IP address of the computer that was used to send the threatening emails to the victim [Petitioner's ex-wife] was the victim's own computer.  Thus, it could not have been J. Walker who sent the emails but the victim herself.

The Court is at a loss for words.  The evidence in this case clearly an unequivocally established that all threatening e-mails sent to the victim were done so through Petitioner's use of his son's computer and e-

---

[13]The Court notes that in D.E. 11, United States' Response In Opposition To Petitioner's Motion to Vacate Sentence, there is a footnote addressing the issue of use of a dictionary by the jury: "In a telephone conversation held with Walker's lead counsel on September 5, 2013, she stated having no recollection of the jurors' alleged use of a Spanish/English dictionary throughout trial." (D.E. 11 at p. 12 n. 3).

mail account.  The evidence established that J. Walker did this in order to have his ex-wife believe that it was actually her son writing the horrific communications.

There was no basis for counsel to request a subpoena for IP addresses or computer records to establish the un-establishable.  The First Circuit Court left no doubt as to this:

> As the rift between the spouses deepened, Amy began receiving harassing and threatening e-mails.  These comuniqués were laced with derogations...and contained threats to harm Amy if she continued her battle for custody.  Although the e-mails originated from A.M.W.'s e-mail account, A.M.W. testified that his father had composed them.  Amy corroborated this identification, testifying that she inferred the appellant's authorship from certain habitual misspellings and turns of phrase.

Walker, 665 F.3d at 221.

Petitioner's allegation that these failed subpoenas would have proven his innocence is meritless and contrary to the overwhelming evidence in this case. As a result, his allegation is **DENIED**.


**Ineffective Assistance of counsel - Trial counsel was ineffective when she failed and/or refused to place the defense's most important witness on the defense witness list**

J. Walker alleged that his most important witness, a Michigan State Judge involved in the couple's custody case, was not able to testify at his trial due to counsel's unwillingness to put him on the defense witness list and her failure to call him as a witness.

Once again the record completely contradicts Petitioner.

On August 8, 2009, Petitioner's counsel filed a motion requesting that Judge Gadola be allowed to testify on that same date either by telephone or video conferencing, (D.E. 119 in Cr. 08-0400(PG)).  In said motion it is clearly stated that this Court had allowed the testimony of the Judge as

Case 3:13-cv-01448-PG   Document 40   Filed 08/20/15   Page 30 of 39

Civil No. 13-1448(PG)                                                      Page 30

part of the defense's case-in-chief[14].  The matter was discussed and

arguments were heard by the Court prior to the start of Trial on August 25,

2009[15].   The ruling of the Court was that the testimony via telephone

conference nor video conference would be allowed, however, the certified

documents from Michigan state court (defense exhibit OOO) were allowed into

evidence.   These documents established that Petitioner was granted

parenting rights over the minor, thus, the judge's testimony would have

been collateral evidence.

     The record clearly indicates that there was no refusal from the part

of defense counsel to bring the Michigan judge as a witness and that

counsel presented the evidence to the jury by way of a certified Michigan

state court order.  Thus, the claim of ineffective assistance of counsel as

to the testimony of the Michigan state judge is **DENIED.**


**Ineffective Assistance of Counsel - Trial counsel was ineffective when
knowing that the Indictment was duplicitous and multiplicitous she failed
and/or refused to object to said errors, or to preserve these issues for an
appeal**

     Petitioner alleged that his counsel was ineffective since knowing that

the Indictment was allegedly defective she did not preserve the issue for

an appeal.  As argument to sustain his position, Petitioner relies on the

government's brief submitted to the Supreme Court as a result of J.

Walker's petition for certiorari.

     Petitioner fails in his argument.  J. Walker assumes as fact that the

---

[14]The record reflects that prior to requesting the testimony of the
Michigan state judge, defense counsel had attempted to admit Michigan state
court documents that allowed Petitioner to have "parenting time" with the minor
victim.(D.E. 119 at p. 2 in Cr. 08-0400(PG)).

[15]See Trial Transcript of August 25, 2009, p.4-19.

indictment he was charged with was found to be either duplicitous or multiplicitous or both.  There is nothing on the record that states this or even implies it.

Petitioner has astutely relied on the opinion of the First Circuit regarding this issue.  In Petitioner's appeal's brief, J. Walker - through his appeal counsel - challenged the indictment and argued that the same was duplicitous and multiplicitous.

First, he asserts that the interstate stalking count, which listed both Amy and A.M.W. as intended victims, is duplicitous. Second, he asserts that cyber stalking should have been charged as a single course of conduct offense and that separating it into various counts offended the rule against multiplicity. Walker 665 F.3d at 227.

This is the exact same argument Petitioner raised in his 2255 request for relief but under the framework of an ineffective assistance of counsel claim.

The First Circuit Court in its ruling as to J. Walker's challenges to the indictment determined that the same were too late.  "Because the appellant did not raise either duplicity or multiplicity challenges at any time prior to trial, he has waived those challenges." Id. at 228.  Clearly, Petitioner is using the First Circuit Court's ruling to bring forth this specific allegation of ineffective assistance of counsel.

In order for Petitioner to prevail in this claim he must comply with the Strickland two (2) part test. J. Walker has failed at this.  He neither presented the argument that a reasonable attorney would have submitted these arguments nor did he provide current case law that would establish or would sway this Court into finding that, if presented, the arguments of duplicitous and multiplicity of the indictment would have prevailed.

What J. Walker has done is once again submitted a conclusion which he has reached without support in the record.  In addition, Petitioner has argued before this Court as part of his 2255 claim the reasons why he believes the government's brief submitted before the Supreme Court of the United States as a result of his petition for certiorari is wrong.  Said argument is completely irrelevant to the matter at hand.  Furthermore, the Supreme Court, after having received both Petitioner's and the government's brief, denied the request for certiorari.

Since Petitioner's claim of ineffective assistance of counsel as to counsel's failure to preserve challenges to the indictment for appeal fails to meet the <u>Strickland</u> standard the same is **DENIED.**


Arguments identified as thirteen (13) and fourteen (14) in this opinion were alleged by Petitioner, for the first time, in his Amended 2255 Petition filed on June 2, 2014 (D.E. 31).

**"Relate Back" Allegations**

J. Walker filed the Amended Petition because he had previously submitted a motion requesting that he be allowed to amend his original petition, (D.E. 19).  Without waiting for this Court's ruling, he submitted, together with the request to amend, a motion in which he submitted the amendment he chose to make to his original petition, (D.E. 20).

Specifically Petitioner wanted to amend his argument as to his sentence.  J. Walker re-alleged his argument that his sentence was excessive based on the fact that his ex-wife worked in this court and added that the sentence imposed by the Court was incorrect.  Petitioner alleged that the sentence orally pronounced by the Court was different from what

appears in his Judgment.   Petitioner claimed that this Court orally
sentenced him to sixteen (16) months of imprisonment as to count one (1)
but the judgment reflected sixty (60) months of imprisonment; thus his
sentence should be amended to reflect what was stated orally, (D.E. 20 at
p. 3).

On March 20, 2014, this Court entered an order finding moot
Petitioner's original 2255 Petition and granted J.Walker's request to amend
the petition, (D.E. 22).   On the same day, the Court stated by means of a
separate order "the court will not consider Petitioner's partial amendments
to be incorporated into his original motion.   A fully amended motion to
vacate shall be filed by Petitioner by no later...", (D.E. 25).

J. Walker submitted his Amended Petition unsigned and without date.
The same was received by this Court on April 30, 2014, (D.E. 31).

In Petitioner's Amended Petition he incorporated the addition to his
original sentencing argument and adds for the first time two (2) completely
new arguments.

The new arguments added by Petitioner were:

- Trial counsel was ineffective for failing to object to inaccuracies
  contained in the Pre Sentence Report[16]; and

- Trial counsel was ineffective for failing to advise J. Walker of any
  plea offer of the government and/or by failing to seek plea
  negotiations.

In order for this Court to consider these two new arguments which were
raised well outside the one (1) year statute of limitations for filing

---

[16]Petitioner fails to state what inaccuracies he is referring to.   J.Walker
would like this Court to entertain one liner allegations without further
substance.

Section 2255 Petitions, this Court must determine first if they relate back to J. Walker's original 2255 request for relief.

First, Rule two (2) of the Rules governing Section 2255 proceedings provides that section 2255 motion: "shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified. It shall also state the relief requested." R. Gov. Sec. 2255 Proceedings 2(b).

Additionally, in this case the Court must also look at the application of Federal Rule of Civil Procedure 15 as it applies to Section 2255 statute of limitations of one (1) year, United States v. Ciampi, 419 F.3d 20 (1st Cir. 2005). Rule 15 allows "otherwise untimely pleadings amendments to 'Relate back' to the date of the timely filed original pleading provided the claim asserted in the amended plea 'arouse out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Ciampi, 419 F3d. at 23 (citing Fed. R. Civ. P. 15(c)(2)). However, "in the habeas corpus context, the Rule 15 'relation back' provision is to be strictly construed, in light of 'Congress decision to expedite collateral attacks by placing stringent time restrictions on [them]'." Id. (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)).

Therefore, new claims alleging different instances of ineffective assistance of counsel are not part of the same conduct, transaction or occurrence and do not relate back to the original filing of the Section 2255 petition. "If claims asserted after the one year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim

significance." <u>Mayle</u>, 545 U.S. 662.

In the case before the Court, allegations thirteen (13) regarding inaccuracies in the Pre Sentence Report and allegation fourteen (14) regarding failure to seek a plea offer were not addressed by Petitioner in his original filing or in his request to amend.  The matters were not even mentioned.  J. Walker's previous filings do not question the Pre Sentence Report nor do they even mention a plea negotiation. To the contrary, Petitioner continues to assert his innocence. As such, the two (2) allegations do not relate back to the original timely-filed 2255 Petition and are thus time barred.  This Court can not consider claims that are filed for the first time beyond the one (1) year period allowed for their filing.  As such, allegations of ineffective assistance of counsel thirteen (13) and fourteen (14) are **DENIED**[17].

**<u>Sentencing Error</u>**

In the Amended Petition, J. Walker included the argument that the verbal sentence given by the Court as to count one (1) was different from what is stated in the Judgment, and thus, his sentence for count one (1) should be corrected to sixteen (16) months rather than what the judgment states, sixty (60) months.

A review of the sentencing hearing transcript indicated that the sentence as to count one (1) was transcribed by the court reported as sixteen (16) months rather than sixty (60) months.  This is made extremely

---

[17]The Court however notes that a review of the Sentencing Hearing transcript, December 16, 2009, clearly attests to the fact that Petitioner's counsel vigorously objected to findings contained in the Pre Sentence Report. Furthermore, D.E. 16 in Cr. 08-0400(PG), Minutes of Status Conference indicates that Petitioner's counsel made a formal request for a plea offer to the government. Given the adamant stance of J. Walker as to his innocence in this matter it is highly improbable that Petitioner would have agreed to plead guilty.  Petitioner has presented zero supporting evidence to sustain this claim.

clear by the fact that further along in the paragraph, Petitioner's total sentence was stated as being one hundred and thirty seven (137) months, (Sentencing Hearing Transcript, December 16, 2009, at p. 58).

The Court will not allow Petitioner to take advantage to what is clearly a typographical error in order to reduce improperly his term of imprisonment.  Petitioner's argument is **DENIED.**

**Claim of Actual Innocence**

J. Walker alleged that he is completely innocent of the charges relating to him sending the threatening e-mails to his ex wife. He based this claim of actual innocence on Petitioner's theory that it was the victim herself who, with the use of Petitioner's user name and password sent the e-mails to herself[18]. J. Walker theorized that the victim did this in order "to rid herself of him for good."(D.E. 1 at p. 8).

The Court finds this allegation completely ludicrous.  Nevertheless the Court will state its reasoning for the denial.

The Supreme Court has emphasized that the actual innocence exception is very narrow, reserved for truly exceptional cases, <u>Walker</u> v. <u>Russo</u>, 506 F.3d 19, 21 (1st Cir.2007), (citing <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," <u>Bousley</u> v. <u>United States</u>, 523 U.S. 614, 623-624 (1998), <u>United States</u> v. <u>Barrett</u>, 178 F3d. 34, 57 (1st Cir.1999).  In order to succeed, the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found

---

[18]Petitioner is reminded that the evidence presented at trial, accepted by the jury through a guilty verdict and affirmed by the First Circuit Court on appeal, clearly established that the emails were sent by J. Walker using the email account of his son.  Thus, the emails in question were not sent with the use of either Petitioner's username or his password.

petitioner guilty beyond a reasonable doubt." <u>Barreto-Barreto</u> v. <u>United States</u>, 551 F.3d 95, 102 (1st Cir. 2008) (quoting <u>House</u> v. <u>Bell</u>, 547 U.S. 518, 536-537 (2006)).

In this case, Petitioner fails to meet his burden of factual innocence. J. Walker has not presented any new evidence that would sustain his claim of innocence.  What he has done is state a farfetched theory as to who sent the threatening e-mails.  A theory that completely contradicts the evidence in this case.  Petitioner's claim of actual innocence is **DENIED**.

The Court has gone over every allegation presented by Petitioner in all of his filings.  The Court did not need to do this but has chosen to do so in order to leave absolutely no doubt in J. Walker's mind of his guilt of what can only be construed as a *machiavelic* attempt to scare and threaten those whom he was supposed to love and protect.

This Court presided over Petitioner's trial and heard first hand from both victims the crude details of Petitioner's failed attempts to destroy not only the relationship between a mother and child but to destroy their feeling of safety as well.

The Court has taken the time to meticulously address every allegation raised.  There is absolutely no doubt that J. Walker was represented at all stages of the case by competent counsel whom did her best in a challenging case.  There was no ineffective assistance of counsel. The evidence against Petitioner was overwhelming and there can be no doubt as to Petitioner's guilt.  Simply put, J. Walker must now face the consequences of his deliberate actions.

**<u>Evidentiary hearing</u>**

Petitioner has requested an evidentiary hearing. Because J. Walker has

failed to raise any cognizable issue under section 2255, his request for an evidentiary hearing is DENIED.

Evidentiary hearings in section 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. Moreno-Morales v. United Sates, 334 F.3d 140 (1st Cir. 2003). An evidentiary hearing "is not necessary when a section 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

Such is the case of J. Walker's section 2255 petition insofar as it is simply unsupported by the facts and evidence in the record of this case.

### III. CONCLUSION

For the reasons stated, the Court concludes that Petitioner **JEFFREY MARTIN WALKER** is not entitled to federal habeas relief on the claims raised. Accordingly, it is ordered that petitioner **JEFFREY MARTIN WALKER'S** request for habeas relief under 28 U.S.C. Sec. 2255(D.E.1) is **DENIED,** his amended motion for relief (D.E. 31) is **DENIED,** and his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. Sec. 2255 is **DISMISSED WITH PREJUDICE.** Petitioner's request for evidentiary hearing is also **DENIED.**

### IV. CERTIFICATE OF APPEALABILTY

For the reasons previously stated the Court hereby denies Petitioner's request for relief pursuant to 28 U.S.C. Section 2255. It is further ordered that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 20, 2015.

S/**JUAN M. PEREZ-GIMENEZ**
**JUAN M. PEREZ-GIMENEZ**
**UNITED STATES DISTRICT JUDGE**